# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>ANTWAIN DESHAUN SPRATT,<br><br>    Defendant. | No. 16-CR-1018-LRR<br><br>**REPORT AND RECOMMENDATION CONCERNING *ALFORD* PLEA** |

_____

    On January 31, the above-named defendant, Antwain Deshaun Spratt, by consent (Doc. 189), appeared before the undersigned United States Magistrate Judge pursuant to Federal Rule of Criminal Procedure 11, and entered an *Alford* plea to Count 14 of the Superseding Indictment (Doc. 33). After cautioning and examining the defendant under oath concerning each of the subjects mentioned in Rule 11, I determined that the *Alford* plea was knowledgeable and voluntary, and the offense charged was supported by an independent basis in fact containing each of the essential elements of the offense. Therefore. I **RECOMMEND** that defendant's *Alford* plea be accepted and defendant be adjudged guilty.

    At the commencement of the Rule 11 proceeding, the defendant was placed under oath and advised that if he answered any questions falsely, he could be prosecuted for perjury or for making a false statement. He also was advised that in any such prosecution, the Government could use against him any statements he made under oath.

1

The court asked a number of questions to ensure the defendant's mental capacity to enter a plea. The defendant stated his full name, his age, and the extent of his schooling. The court inquired into the defendant's history of mental illness and addiction to narcotic drugs. The court further inquired into whether the defendant was under the influence of any drug, medication, or alcoholic beverage at the time of the plea hearing. From this inquiry, the court determined that the defendant was not suffering from any mental disability that would impair his ability to make knowing, intelligent, and voluntary pleas of guilty to the charges.

The defendant acknowledged that he had received a copy of the Superseding Indictment, and he had fully discussed these charges with his attorney.

The court determined that the defendant was entering an *Alford* plea without the benefit of a plea agreement with the Government. The Government did not consent to entry of an *Alford* plea. The defendant was advised also that after his plea was accepted, he would have no right to withdraw the plea at a later date, even if the sentence imposed was different from what the defendant or his counsel anticipated.

The court summarized the charge against the defendant, and listed the elements of the crime. The court determined that the defendant understood each and every element of the crime, and the defendant's counsel confirmed that the defendant understood each and every element of the crime charged.

The court elicited a full and complete factual basis for all elements of the crime charged in Count 14 of the Superseding Indictment to which the defendant was entering an *Alford* plea. Count 14 of the Superseding Indictment charges defendant with being a felon in possession of a firearm. The court established a factual basis for defendant's

guilty by eliciting from the Government the evidence it would present at trial. The Government provided the following summary:

> On April 19, 2016, Deputy United States Marshals went to a residence at XX76 Jackson Street in Dubuque to arrest defendant on an outstanding federal warrant for a drug distribution charge. The Deputies met with Vivian Weakley, who was defendant's girlfriend, and the tenant at XX76 Jackson Street. Weakley denied defendant was present in the residence (and denied knowing anyone by defendant's name), but consented to a search of the residence by officers. During the search, officers found defendant hiding in an upstairs bedroom closet. An unloaded Hi-Point, model C9, 9mm caliber pistol, bearing serial number P1372703 was found in defendant's clothes in a hamper right outside the closet in which defendant was found. Weakley identified the clothes in the hamper as defendant's clothes. She denied she knew there were any firearms in the residence, and said she had never seen that firearm before in her life.
>
> Other items belonging to defendant were found in the same room where defendant and the firearm were discovered. These items included a medicine bottle bearing defendant's name; a receipt for a Boost Mobile phone bearing the name "Antwon Calloway" (which was for the same phone number previously contacted by a confidential informant in order to purchase heroin from defendant during a controlled buy of heroin on March 24, 2016); and a pay stub bearing defendant's name.
>
> Defendant knowingly possessed the Hi-Point pistol that was found in the hamper in clothes belonging to defendant. At least two cooperating witnesses would testify that they have seen defendant in the recent past with handguns, one of whom indicated the handgun he saw in defendant's possession was a 9mm handgun. Neither witness, however, would be able to positively identify the seized weapon as the one they previously saw defendant possess.
>
> Defendant had previously been convicted of the following felonies:
> 1. On or about December 4, 1996, defendant was convicted in the Circuit Court of Cook County, Illinois, case number 96-CR-29623, of delivery of a controlled substance, cocaine.

2. On or about August 18, 1998, defendant was convicted in the Circuit Court of Cook County, Illinois, case number 98-CR-20763, of possession of a controlled substance.
3. On or about August 27, 1998, defendant was convicted in the Circuit Court of Cook County, Illinois, case number 97-CR-30108, of delivery of a controlled substance, 1 to 15 grams of cocaine within 1,000 feet of the real property comprising a church.
4. On or about May 17, 2012, defendant was convicted in the Iowa District Court in and for Black Hawk County, case number FECR178714, of theft in the 2nd degree.
5. On or about May 17, 2012, defendant was convicted in the Iowa District Court in and for Black Hawk County, case number FECR173105, of willful injury causing bodily injury.

The Government also indicated that ATF Special Agent Tim Hunt, who is a firearms expert, examined the firearm at issue and determined that it was a weapon that will, or is designed to expel a projectile by action of an explosive and meets the definition of firearm under federal law. Special Agent Hunt has also determined that the firearm was manufactured outside the state of Iowa and therefore traveled in interstate commerce at some point before defendant's possession of the firearm on April 19, 2016.

In addition, when the court discussed the elements of the offense, defendant refused to admit knowing possession of the firearm, admitted he was convicted of the felony offenses 1, 4 and 5 listed above, and indicated that he did not have knowledge of whether the firearm had traveled in interstate commerce.

The court advised the defendant of the consequences of his plea, including the maximum fine, the maximum term of imprisonment, and the possibility that restitution could be ordered, and term of supervised release.

With respect to Count **Fourteen**, the defendant was advised that the maximum fine is **$250,000**; the maximum term of imprisonment is **10 years**; the maximum period of

supervised release is **life**; and the minimum period of supervised release is **3 years**. Defendant was also advised, however, that if the court found that he had three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another, then pursuant to 18 U.S.C. §924(e), Count 14 is punishable by a mandatory minimum sentence of 15 years and up to life in prison without the possibility of parole, a fine of up to $250,000, and a term of supervised release of up to five years.

The defendant also was advised that the court is obligated to impose a special assessment of **$100.00**, which the defendant must pay. The defendant also was advised of the collateral consequences of being found guilty of the offense by entering an *Alford* plea. The defendant acknowledged that he understood all of the above consequences.

The court explained supervised release to the defendant, and advised him that a term of supervised release would be imposed in addition to the sentence of imprisonment. The defendant was advised that there are conditions of supervised release, and that if he were found to have violated a condition of supervised release, then his term of supervised release could be revoked and he could be required to serve in prison all or part of the term of supervised release without credit for time previously served on supervised release.

The court also explained to the defendant that the district judge would determine the appropriate sentence for him at the sentencing hearing. The defendant confirmed that he understood the court would not determine the appropriate sentence until after the preparation of a presentence report, which the parties would have the opportunity to challenge. The defendant acknowledged that he understood the sentence imposed might be different from what his attorney had estimated. Defendant also acknowledged that

both he and the government may appeal his sentence to the Eighth Circuit Court of Appeals.  The defendant was advised that parole has been abolished.

The defendant indicated he had conferred fully with his counsel and he was fully satisfied with his counsel.   The defendant's attorney indicated that there is a factual basis for the defendant to be found guilty pursuant to the *Alford* plea.

The defendant was advised fully of his right to plead not guilty, or having already entered a not guilty plea to persist in such plea, and to have a jury trial, including:

1. The right to assistance of counsel at every stage of the pretrial and trial proceedings;

2. The right to a speedy, public trial;

3. The right to have his case tried by a jury selected from a cross-section of the community;

4. That he would be presumed innocent at each stage of the proceedings, and would be found not guilty unless the Government could prove each and every element of the offense beyond a reasonable doubt;

5. That the Government could call witnesses into court, but the defendant's attorney would have the right to confront and cross-examine these witnesses;

6. That the defendant would have the right to see and hear all witnesses presented at trial;

7. That the defendant would have the right to subpoena defense witnesses to testify at the trial, and if he could not afford to pay the fees and costs of bringing these witnesses to court, then the Government would be required to pay those fees and costs;

8. That the defendant would have the privilege against self incrimination; *i.e.*, he could choose to testify at trial, but he need not do so, and if he chose not to testify, then the court would instruct the jury that the defendant had a constitutional right not to testify;

9. That any verdict by the jury would have to be unanimous;

10. That he would have the right to appeal, and if he could not afford an attorney for the appeal, then the Government would pay the costs of an attorney to prepare the appeal.

The defendant also was advised of the rights he would waive by entering an *Alford* plea. The defendant was told there would be no trial, he would waive all the trial rights just described, and he would be adjudged guilty without any further proceedings except for sentencing.

The defendant confirmed that his decision to enter an *Alford* plea was voluntary and was not the result of any promises, and his decision to plead guilty was not the result of any threats, force, or anyone pressuring him to plead guilty.

The defendant confirmed that he still wished to enter an *Alford* plea, and he then entered an *Alford* plea to Count 14 of the Superseding Indictment.

The court finds the following with respect to the defendant's *Alford* plea:

1. The plea was voluntary, knowing, not the result of force, threats or promises, and the defendant was fully competent.
2. The defendant was aware of the maximum punishment.
3. The defendant knew his jury rights.
4. The defendant voluntarily waived his jury rights.
5. There is a factual basis for the plea.
6. The defendant is, in fact, guilty of the crime to which he entered an *Alford* pleading.

The defendant was advised that a written presentence investigation report would be prepared to assist the court in sentencing. The defendant was told that he and his counsel would have an opportunity to read the presentence report before the sentencing

hearing and to object to the contents of the report, and he and his counsel would be afforded the opportunity to present evidence and be heard at the sentencing hearing.

The defendant was advised that the failure to file written objections to this Report and Recommendation within 14 days of the date of its service would bar him from attacking this court's Report and Recommendation, which recommends that the assigned United States District Judge accept the defendant's *Alford* plea and find him guilty of the offense charged in Count 14 of the Superseding Indictment.

*United States v. Cortez-Hernandez*, 2016 WL 7174114 (8th Cir. 2016) (per curiam), suggests that a defendant may have the right to *de novo* review of a magistrate judge's recommendation to accept a plea of guilty even if no objection is filed. *But see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). The district court judge will undertake a *de novo* review of the Report and Recommendation if a written request for such review is filed within fourteen (14) days after this order is filed.

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 1st day of February, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa